UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DRUMMOND AMERICAN LLC, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : NO. 3:08CV1665 (MRK) |
| | : |
| SHARE CORPORATION and | : |
| MARTHA MAHONEY | : |
| | : |
| Defendants. | : |

### MEMORANDUM OF DECISION

This case arises out of the admitted breach of a covenant not to compete in a written employment agreement. Pending before the Court are Plaintiff's Motion for Partial Summary Judgment [doc. # 58], Plaintiff's Motion for Contempt [doc. # 56], and Plaintiff's Motion to Strike Documents and Pleadings in Opposition to Partial Summary Judgment [doc. # 78]. After an on-the-record oral argument and evidentiary hearing on October 26, 2009, and for the reasons that follow, Plaintiff's Motion for Partial Summary Judgment [doc. # 58] is GRANTED in part and WITHDRAWN in part. The Court also GRANTS in part and DENIES in part Plaintiff's Motion for Contempt [doc. # 56], and GRANTS in part and DENIES in part Plaintiff's Motion to Strike [doc. # 78].

**I.**

The Court assumes the parties' familiarity with the facts of this case, and thus recites them here only briefly; other facts will be introduced in the discussion section of the opinion. The facts are largely undisputed. Plaintiff Drummond American LLC ("Drummond") sells commercial grade chemicals and hardware to governmental and industrial customers. Defendant Martha Mahoney

1

worked for Drummond as a Connecticut Sales Agent until August 2008, when she left to work for Plaintiff's competitor, Defendant Share Corporation ("Share"). As a Sales Agent, Ms. Mahoney was the primary contact between Drummond and its customers, and was responsible for soliciting orders from those customers. As a condition of her employment with Drummond, Ms. Mahoney entered into a written employment agreement (the "Agreement"). *See* Am. Compl. [doc. # 47] Ex. A. The Agreement included a covenant not to compete, which reads as follows:

> During the term of his independent sales agency hereunder and for a period of two (2) years following termination thereof, whether by himself or by COMPANY, for whatever reason and whether for cause or without cause, AGENT shall not, directly or indirectly, for or on behalf of himself or any person, firm or entity solicit orders from or sell to any customer to whom or which he solicited or sold on behalf of COMPANY during the last twelve (12) months of his relationship with COMPANY, and products competitive to those distributed by COMPANY. Products competitive to those distributed by COMPANY are those which are substantially similar to or serve substantially similar functions as those products listed in COMPANY's Sales Kit, Catalogs and Manuals furnished to AGENT from time to time.

*See id*. ¶ 3(d)(i); *see also id*. ¶ 3(d)(ii) (a similar provision prohibiting the agent from disclosing customer information).

In August 2008, Ms. Mahoney left Drummond's employ and began work for Share. She was one of several of Drummond's agents who left the company for Share at around that time. Shortly after joining Share, Ms. Mahoney was asked by Share to sign, and she did sign, an agreement stating that she would honor her Agreement with Drummond, including the covenant not to compete. Based on the terms of the covenant, Ms. Mahoney was precluded from selling certain products that were competitive to products distributed by Drummond. All parties agree that Ms. Mahoney was precluded only from selling competitive products from Share to 26 former Drummond customers. Nonetheless, Ms. Mahoney immediately began to sell competitive Share products to her former

Drummond customers, and she has sold products to 12 such customers since she joined Share.

## II.

The standard for summary judgment is a familiar one. Summary judgment is appropriate only when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (quotation marks omitted). "The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986), and the Court must resolve all ambiguities and draw all inferences in favor of the nonmoving party, *see Anderson*, 477 U.S. at 255; *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008). If the moving party carries its burden, the party opposing summary judgment "may not rely merely on allegations or denials." Fed. R. Civ. P. 56(e)(2). Rather, the opposing party must "set out specific facts showing a genuine issue for trial." *Id*. In short, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

### III.

Drummond originally moved for summary judgment on three of the five counts in its Amended Complaint [doc. # 47]. However, at oral argument Drummond's counsel withdrew their summary judgment motion as to Count Three, which alleges tortious interference with contractual relations by Share, and Count Five, which alleges unfair competition by both Defendants in violation of the Connecticut Unfair Trade Practices Act (CUTPA), Conn. Gen. Stat. § 42-110 *et seq*. Therefore, the Court need not consider Counts Three and Five at this time, and will address Plaintiff's Motion for Partial Summary Judgment [doc. # 58] only as to Count One, which alleges a breach of contract by Ms. Mahoney.

Ms. Mahoney does not deny that she breached the contract – nor could she based on the undisputed facts. Instead, she makes four arguments why she should not be held liable for her admitted breach. First, she argues that the covenant is not enforceable based on the five-prong test developed by the Connecticut Supreme Court in *Scott v. Gen. Iron & Welding Co.*, 171 Conn. 132, 137 (1976). Second, she claims that any recovery by Drummond is barred by the doctrine of unclean hands. Third, Ms. Mahoney claims that the covenant is unenforceable because she was constructively discharged in bad faith. Fourth, she argues that Drummond materially breached the Agreement, and that she was therefore no longer bound by its terms. The Court will address each of these arguments in turn.

### A.

"[U]nder Connecticut law, post-employment covenants are valid if reasonable under the circumstances." *MacDermid, Inc. v. Selle*, 535 F. Supp. 2d 308, 316 (D. Conn. 2008); *see also New Haven Tobacco Co. v. Perrelli*, 18 Conn. App. 531, 533-34 (1989) (citing *Scott*, 171 Conn. at

137-38). The enforceability of a covenant not to compete is a question of law to be decided by the Court. *See Hare v. McClennan*, 234 Conn. 581, 589 (1995). Connecticut courts apply a five-prong test, established by the Connecticut Supreme Court in *Scott*, to determine whether a covenant is valid:

> There are five criteria by which the reasonableness of a restrictive covenant must be evaluated: (1) the length of time the restriction is to be in effect; (2) the geographic area covered by the restriction; (3) the degree of protection afforded to the party in whose favor the covenant is made; (4) the restrictions on the employee's ability to pursue his occupation; and (5) the extent of interference with the public's interests.

*New Haven Tobacco Co.*, 18 Conn. App. at 533-34. "The five prong test of *Scott* is disjunctive, rather than conjunctive; a finding of unreasonableness in any one of the criteria is enough to render the covenant unenforceable." *Id*. at 534. Finally, the party challenging the restrictive covenant has the burden of showing that it is unenforceable. *See Scott*, 171 Conn. at 139.

Ms. Mahoney does not challenge the validity of the covenant based on the first and second *Scott* criteria (the length of time and the geographic scope). Nor would such a challenge succeed, given that Connecticut courts have consistently upheld non-compete covenants with similar temporal and geographic restrictions. *See, e.g.*, *New Haven Tobacco Co.*, 18 Conn. App. at 534-35 (holding that a covenant that prevents the employee from selling to only a limited set of customers – an "antisales restriction, as opposed to an anticompetitive restriction" – "is by its nature limited to a definite geographic area" even without an explicit geographic restriction); *Robert S. Weiss & Assoc., Inc. v. Wiederlight*, 208 Conn. 525, 530-31 (1988) (upholding as reasonable a two-year limitation and an implicit geographic limitation based on an anti-sales restriction).

Ms. Mahoney bases her challenge to the enforceability of the restrictive covenant on the third, fourth, and fifth *Scott* factors. As to the third factor, she argues that the covenant is reasonable only

if it protects a legally cognizable interest of the party in whose favor the covenant is made, and that Drummond has no legally cognizable interest in its customers. *See* Defs. Resp. to Pl. Mot. for Partial Summ. J. [doc. # 64] ("Defs. Resp. Summ. J.") at 8-9. Ms. Mahoney's claim is belied by the case law, which establishes that businesses have an interest in their customer relationships. *See, e.g.*, *New Haven Tobacco Co.*, 18 Conn. App. at 536 ("[T]he trial court correctly recognized that the interest sought to be protected by the plaintiff, that is, its clientele, is a legally protected interest. An employer possesses a proprietary right to his customers that he is entitled to protect for a reasonable time."). Ms. Mahoney suggests that as an independent contractor, she, not Drummond, developed and owned the Drummond customer relationships. *See* Defs. Resp. Summ. J. [doc. # 64] at 9. However, Ms. Mahoney cites no case law for this proposition, nor can the Court find any support for such an argument. Furthermore, Ms. Mahoney admitted that her relationship with her customers was largely due to information and support provided by Drummond. *See* Defs. Local Rule 56(a)2 Statement [doc. # 76] ¶¶ 10, 12. The Court declines to adopt a different standard for independent contractors, and concludes that the restrictive covenant satisfies the third prong of the *Scott* test.

Ms. Mahoney also challenges the covenant based on the fourth and fifth *Scott* criteria, and her reasoning is similar on both factors. Essentially, Ms. Mahoney claims that the restriction in the covenant is overbroad, thus interfering with the free market and her own livelihood. *See* Defs. Resp. Summ. J. [doc. # 64] at 9-10. However, her argument seems to rest on the erroneous presumption that Ms. Mahoney was prevented from doing business with as many as 2000 potential customers. *See id*. at 10. This is simply incorrect – the covenant only prevents Ms. Mahoney from doing business with the 26 customers with whom she did business during her last year of her employment with Drummond. As Ms. Mahoney's counsel conceded at oral argument, there are thousands of

potential customers in Ms. Mahoney's geographic area who are not covered by the covenant not to compete, and to whom she could therefore sell Share products.  Therefore, the covenant does not prevent Ms. Mahoney from pursuing her occupation.  Connecticut courts have consistently found that limited restrictions of this type do not unreasonably interfere with the public interest.  *See, e.g.*, *New Haven Tobacco Co.*, 18 Conn. App. at 536-37; *Robert S. Weiss & Assoc.*, 208 Conn. at 533-34; *Torrington Creamery v. Davenport*, 126 Conn. 515, 520 (1940).  In sum, the covenant is reasonable under all five prongs of the *Scott* test.

**B.**

Ms. Mahoney's next argument against summary judgment is that Drummond's claim is barred by the doctrine of unclean hands.  *See* Defs. Resp. Summ. J. [doc. # 64] at 3-6.  She lists four ways in which Drummond's hands are unclean.  First, she alleges that Drummond also hires employees from competitors and encourages them to ignore restrictive covenants.  *See id*. at 4.  Second, she claims that Drummond cut the pay of its district managers.  *See id*.  Third, Ms. Mahoney alleges that Drummond violated an agreement with her that allowed her to access all customers in her territory.  *See id*. at 5.  Specifically, Ms. Mahoney claims that she was told that she could call on any account in her territory that did not have existing Drummond products, *see* Defs. Resp. Summ. J. [doc. # 64] Ex. B ¶ 2, and that Drummond reneged on that agreement when it allowed agents from its parent corporation (Lawson) to sell chemical products to Drummond customers on an exclusive basis, which Ms. Mahoney claims deprived her of 1600 to 2000 potential customers, *see id*. at 2.  This allegation also forms the basis for Ms. Mahoney's fourth argument – that Plaintiff materially breached the Agreement and that she was therefore no longer bound by its terms – which the Court addresses below.  Fourth and finally, Ms Mahoney argues that Drummond drove her away by

presenting her with a new employment agreement and telling her she would be fired if she did not sign it. *See id.* at 5-6.

"The doctrine of unclean hands expresses the principle that where a plaintiff seeks *equitable relief*, he must show that his conduct has been fair, equitable and honest *as to the particular controversy in issue*." *Bauer v. Waste Mgmt. of Connecticut, Inc.*, 239 Conn. 515, 525 (1996) (emphasis added); *see also Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814-15 (1945). Even accepting, for the purposes of this discussion, the allegations underlying Ms. Mahoney's unclean hands defense, her argument fails. First, and most important, the doctrine of unclean hands precludes only equitable relief. *See Bauer*, 239 Conn. at 525. In this case, Drummond is seeking both an injunction (an equitable remedy) and damages (a legal remedy), with the precise remedy to be determined after the Court rules on summary judgment. Ms. Mahoney may be able to raise her unclean hands argument to prevent an injunction – although, as discussed below, the Court is skeptical that such an argument would succeed. In any event, this argument does not preclude summary judgment on the merits of Drummond's legal claim.

Furthermore, none of the alleged behavior of Drummond supports an unclean hands argument. Only conduct that bears on "the particular controversy at issue" can be the basis for an unclean hands defense. *Id.*; *see also Precision Instrument*, 324 U.S. at 814-15 ("[W]hile equity does not demand that its suitors shall have led blameless lives . . . as to other matters, it does require that they shall have acted fairly and without fraud or deceit *as to the controversy in issue*.") (emphasis added, internal quotation marks and citation omitted). The allegation that Drummond has also hired employees from competitors and encouraged them to violate covenants not to compete (assuming for the moment that Defendants could prove this with non-hearsay evidence) has nothing to do with

8

the present dispute, as it does not impact Ms. Mahoney or Share in any way. It might be otherwise if Ms. Mahoney alleged that Drummond had poached employees from Share and urged them to violate a covenant not to compete. But she makes no such allegation. Drummond's alleged "threat" to cut the pay of district managers is also irrelevant, as Ms. Mahoney was not a district manager. The allegation that Drummond violated an agreement with Ms. Mahoney that allowed her to access all customers in her territory is really an argument that Drummond materially breached the Agreement, invalidating the covenant, and the Court will address it as such below. Finally, under Connecticut law, there is nothing wrongful about an employer asking its employee to sign a new employment agreement. In sum, all of the factual allegations underlying Ms. Mahoney's unclean hands arguments are either irrelevant or do not rise to the level of unclean hands.

## C.

Ms. Mahoney also claims that she was constructively discharged, which (she says) invalidates the covenant not to compete. *See* Defs. Resp. Summ. J. [doc. # 64] at 6-8. A constructive discharge "occurs when an employer, rather than directly discharging an individual, intentionally creates an intolerable work atmosphere that forces an employee to quit involuntarily. . . . Working conditions are intolerable if they are so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Chertkova v. Connecticut Gen. Life Ins. Co.*, 92 F.3d 81, 89 (2d Cir. 1996) (internal quotation marks and citation omitted); *see also Murphy v. BeavEx, Inc.*, 544 F. Supp. 2d 139, 153 (D. Conn. 2008).

There are two problems with Ms. Mahoney's constructive discharge defense. First, she cites to no cases for the proposition that a constructive discharge invalidates a restrictive covenant. In fact, the Connecticut Supreme Court has stated that "the reasonableness of a restrictive covenant of

9

employment does not turn on whether the employee subject to the covenant left his position voluntarily or was dismissed by the employer." *Robert S. Weiss & Assoc.*, 208 Conn. at 532. In other words, there is no question that had Ms. Mahoney simply been fired, she would still be bound by the restrictive covenant. A constructive discharge is a legal construct to denote a firing of an employee. Therefore, under Connecticut law, there is no reason to believe that a constructive discharge invalidates a covenant not to compete when a straightforward termination would not.

Second, Ms. Mahoney rests her constructive discharge defense on some of the same arguments that underlie her unclean hands argument. Specifically, Ms. Mahoney points to the alleged breach of a promise that she would be allowed to access all customers in her territory and the fact that Drummond asked her to sign a new employment agreement, along with the fact that Drummond and its parent corporation ("Lawson") had been fined $30 million by the Justice Department for conduct that has nothing to do with this case. *See* Defs. Resp. Summ. J. [doc. # 64] at 6-8. These allegations, even if accepted as true, "do not legally suffice to sustain an inference that a reasonable person would have been 'compelled' to resign." *Martin v. Citibank, N.A.*, 762 F.2d 212, 221 (2d Cir. 1985). A reasonable person would not necessarily have felt forced to resign based on Drummond's insistence that its employees sign a new employment agreement – in fact, it is clear from the evidence that many Drummond employees did sign the new agreement. Furthermore, while Ms. Mahoney may have been dissatisfied with her job after the alleged breach of a promise regarding access to customers, there is no evidence that her working conditions became intolerable or that Drummond intended to force Ms. Mahoney to resign. *See Petrosino v. Bell Atlantic*, 385 F.3d 210, 231-32 (2d Cir. 2004) (holding that mere dissatisfaction with working conditions is not sufficient to support a constructive discharge claim). Finally, it is unclear how the fine by the Justice

Department impacted Ms. Mahoney at all – in any event, it was clearly not intentionally created by Lawson to force Ms. Mahoney to quit.

Ms. Mahoney attempts to salvage her constructive discharge defense by arguing that she was constructively discharged in bad faith. *See* Defs. Resp. Summ. J. [doc. # 64] at 6-7. In making this argument, Ms. Mahoney relies on a case in which the Seventh Circuit held that a restrictive covenant is not enforceable where the employer acted in bad faith. *See Rao v. Rao*, 718 F.2d 219, 222-23 (7th Cir. 1983) (finding that the plaintiff was discharged simply to prevent the vesting of a contractual provision that would have allowed him to purchase a 50% stake in the company). Even assuming that the Seventh Circuit's decision in *Rao* reflects the law of Connecticut, Ms. Mahoney has not presented evidence of any bad faith by Drummond that would allow her to survive summary judgment. Her only evidence of bad faith is an affidavit of a former Drummond employee named Jason Howard, in which Mr. Howard claims that he heard a Lawson employee whose name he "remember[s] to be Denny Combs" say during a conference call that some Drummond employees would not like the new employment agreement, "'and that's fine, we'll just move on.'" *See* Defs. Resp. Summ. J. [doc. # 64] Ex. M. ¶ 4. Aside from the fact that this statement is inadmissible hearsay originating from an employee of Lawson whose name may or may not have been Denny Combs, whose role within Lawson is unknown, and who almost certainly did not the authority to bind Drummond, this statement simply does not rise to the level of bad faith. Again, Drummond could have fired Ms. Mahoney without explanation had it chosen to do so and the restrictive covenant would still have been enforceable under Connecticut law. Therefore, there is little question that if Drummond fired her because she refused to sign a new employment agreement, the covenant would remain valid.

11

**D.**

Ms. Mahoney's final argument was raised by her counsel during oral argument.[1] Specifically, Ms. Mahoney alleges that *after* she joined Drummond and signed the Agreement, the Agreement was modified by a statement made by Stuart Mattson, Ms. Mahoney's manager, that Ms. Mahoney could sell to any account in her territory that did not already have Drummond's products. *See* Defs. Resp. Summ. J. [doc. # 64] Ex. B ¶ 2. According to Ms. Mahoney, Drummond then breached the Agreement, as modified, when it unilaterally decided that Ms. Mahoney would not be allowed to sell to customers that already had existing Lawson products. Ms. Mahoney claims that this breach by Drummond was material, and therefore excused her from any future performance of the Agreement, including the covenant not to compete.

The problem with Ms. Mahoney's argument is that the Agreement contains a merger clause, which reads as follows:

> This instrument supersedes all previous agreements between the parties and contains the entire agreement between them, and it is expressly agreed that no representations, promises, conditions, warranties or understanding, either express or implied, other than herein set forth, shall be binding upon either party, and that none of the provisions of this Agreement shall be waived, altered, or amended, except by writing signed solely by one of the following: Chairman of the Board, Chairman of the Executive Committee, President, Vice President of Sales or National Sales Manager of [Drummond] on the one hand and by [Mahoney] on the other.

Am. Compl. [doc. # 47] Ex. A ¶ 11. Thus, Ms. Mahoney asks the Court to find that an oral statement by her manager modified the Agreement despite a provision in the Agreement that expressly provides that the Agreement could be modified only by a writing signed by one of five

---

[1] Because this issue was first raised during oral argument, the Court instructed the parties to file supplemental briefs, which they did. *See* Defs. Supp. Resp. to Mot. for Partial Summ. J. [doc. # 90] ("Defs. Supp. Resp."); Pl. Supp. Br. in Supp. of Mot. for Partial Summ. J. [doc. # 91] ("Pl. Supp. Br.").

high-ranking Drummond officers and board members.[2] The Court will not ignore such an unambiguous merger clause.

Ordinarily, parties are free to modify their contractual agreements, and may even do so orally. *See, e.g.*, *Baier v. Smith*, 120 Conn. 568 (1935). However, "the unambiguous terms of a written contract containing a merger clause may not be varied or contradicted by extrinsic evidence." *Tallmadge Bros., Inc. v. Iroquois Gas Transmission Sys., L.P.*, 252 Conn. 479, 503 (2000). It is true that one exception to this rule is where the extrinsic evidence is offered "to prove a collateral oral agreement which does not vary the terms of the writing" or "to add a missing term in [a] writing which indicates on its face that it does not set forth the complete agreement." *Id.* at 503 n.14 (internal quotation marks and citation omitted); *see also Baier*, 120 Conn. at 568. But that exception does not apply here, as Ms. Mahoney is attempting to add a very significant term to an integrated and complete agreement. Furthermore, where a contract specifies the method by which it must be modified, courts have refused to recognize claims that the contract has been modified by means that do not comply with the explicitly recognized mechanism for modification. *See, e.g.*, *TradeSource, Inc. v. Kemper Constr., Inc.*, 96 Conn. App. 806, 813 (2006); *Grossman v. Computer Curriculum Corp.*, 131 F. Supp. 2d 299, 306 n.4 (D. Conn. 2000).

Ms. Mahoney is correct that whether the parties intended to modify a contract is ordinarily a question of fact, which would preclude summary judgment. *See Three S. Dev. Co. v. Santore*, 193 Conn. 174, 177-78 (1984). But here, where there is unambiguous contract language governing the method by which the Agreement can be modified, the interpretation of that language becomes a

---

[2] Mr. Mattson was not the "Chairman of the Board, Chairman of the Executive Committee, President, Vice President of Sales or National Sales Manager of [Drummond]."

question of law. *See Isham v. Isham*, 292 Conn. 170, 181 (2009) (holding that where the language of a contract is clear and unambiguous, "the contract must be given effect according to its terms, and the determination of the parties' intent is a question of law"). The Court concludes that any statement by Mr. Mattson cannot be construed as a valid modification of the Agreement in the face of a merger clause that clearly establishes that Mr. Mattson had no authority to modify the Agreement.[3]

Finally, it is worth noting that even if Mr. Mattson had the authority to modify the Agreement – and he did not – the Court is doubtful that there was sufficient consideration to support a valid modification. *See Thermoglaze, Inc. v. Morningside Gardens Co.*, 23 Conn. App. 741, 745 (1991) ("A modification of an agreement must be supported by valid consideration and requires a party to do, or promise to do, something further than, or different from, that which he is already bound to do."). However, having concluded that any oral representation by Mr. Mattson could not constitute a modification of the Agreement, the Court need not decide the question of consideration.

Having rejected each of Ms. Mahoney's arguments regarding the unenforceability of the Agreement, and there being no question that Ms. Mahoney breached the Agreement, the Court grants partial summary judgment on liability to Drummond on Count One. Remaining to be determined is the relief, if any, for Ms. Mahoney's breach.

---

[3] Ms. Mahoney also seems to suggest that the contract was modified by a course of performance by the parties. *See* Defs. Supp. Resp. [doc. # 90] at 2. However, even were there conduct by the parties that would constitute a course of performance – which the Court doubts – a course of performance is extrinsic evidence that may only be used to interpret ambiguous contractual language. *See Tinty v. Profita*, No. SPN-9012-15231-PE, 1992 WL 119199, at *2 (Conn. Super. Mar. 18, 1992) ("A course of conduct . . . indicate[s] the intent of the parties for the purpose of interpreting *ambiguous* language in a contract.") (citing *Bead Chain Mfg. Co. v. Saxton Prods., Inc.*, 183 Conn. 266, 274-75 (1981)) (emphasis added); *see also* 11 Williston on Contracts § 32:14 (4th ed.) ("[T]he parties' conduct, no matter how probative in the abstract, will not be considered by many and perhaps most courts unless the contract is ambiguous."). As discussed above, the language of the Agreement is unambiguous.

## IV.

Plaintiff's Motion for Contempt [doc. # 56] and Motion to Strike [doc. # 78] are also pending. The Court will briefly address each motion. Drummond asks the Court to find the Defendants in civil contempt for failing to comply with the Injunction filed by the Court on December 1, 2008, *see* Order [doc. # 28], pursuant to a Joint Motion for Preliminary Injunction [doc. # 27]. *See* Pl. Mot. for Contempt [doc. # 56]. Drummond alleges that after the entry of the Injunction, Ms. Mahoney sold more than $10,000 in competitive products to five of the customers covered by the Injunction. *See* Mem. of Law in Supp. of Pl. Mot. for Contempt [doc. # 57] ("Pl. Mem. Contempt") at 2. Approximately $3,800 was from the sale of chemical products and approximately $6,900 was from the sale of hardware products. *See id*. at 9. Drummond seeks an Order of the Court reiterating the Injunction, damages in the amount of its own lost profits and profits gained by Defendants, as well as attorneys' fees and costs associated with this motion. *See id*. at 17.

Ms. Mahoney does not deny making sales to customers covered by the Injunction. However, she asserts two reasons why her sales did not violate the Injunction. First, as to the sale of chemical products, Defendants argue that Ms. Mahoney received the purchase orders prior to the entry of the Injunction, and she had a good faith belief that fulfilling these orders after the Injunction had been filed was not a violation of the Injunction. *See* Def. Resp. to Mot. for Contempt [doc. # 65] ("Def. Resp. Contempt") at 1-2. Second, as to the sale of hardware products, Defendants argue that Ms. Mahoney reasonably believed that such products were not "products competitive to those distributed by Plaintiff" under the Injunction. *See id*. at 2. In making that determination, Ms. Mahoney relied on deposition testimony from Drummond's corporate representative, Thomas Gawne, on this point.

"A court's inherent power to hold a party in civil contempt may be exercised only when (1)

the order the party allegedly failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the party has not diligently attempted in a reasonable manner to comply." *New York State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1351 (2d Cir. 1989). "To comply with the specificity and clarity requirements, an injunction must be specific and definite enough to apprise those within its scope of the conduct that is being proscribed." *Id*. at 1352 (internal quotation marks and citation omitted). "A clear and unambiguous order is one that leaves no uncertainty in the minds of those to whom it is addressed, . . . who must be able to ascertain from the four corners of the order precisely what acts are forbidden . . . ." *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995) (internal quotation marks and citation omitted). Finally, the conduct of the party to be sanctioned need not be willful in order to warrant a finding of contempt – a failure "to ensure proper and effective compliance with the terms" of the Court's Order or to be "reasonably diligent and energetic in attempting to accomplish what was ordered" is sufficient. *Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd.*, 885 F.2d 1, 5 (2d Cir. 1989).

With this standard in mind, the Court grants the portion of Plaintiff's Motion for Contempt [doc. # 56] that concerns the sale of chemical products after the Injunction was entered. Even if a purchase order was received prior to the date of the Injunction, the sale of products came after the Injunction, and the Injunction expressly prohibits the solicitation and the sale of products to Ms. Mahoney's former Drummond customers. Ms. Mahoney's sales of chemical products simply do not show a diligent attempt to comply with the Injunction, and Ms. Mahoney's counsel admitted during oral argument that her good faith belief that such sales would not violate the Injunction does not preclude a finding of contempt.

However, the Court denies the portion of Drummond's Motion for Contempt [doc. # 56] that

pertains to hardware products. Mr. Gawne, Drummond's 30(b)(6) witness, stated during his deposition that "hardware would not be a competing product line."[4] During the evidentiary hearing, Ms. Mahoney testified that she relied on Mr. Gawne's statement in selling hardware products after the Injunction was entered. Ms. Mahoney's testimony was undisputed. Though Mr. Gawne later clarified his testimony by stating that certain hardware products were competitive with Drummond products, that was after Ms. Mahoney had already made her hardware sales. Therefore, the Court will not hold her in contempt for the sale of hardware products.

The Court warns Ms. Mahoney and her counsel that further sales of hardware products to customers covered by the Injunction will not be tolerated. As directed by the Court at oral argument, the parties have submitted a proposed amendment to the Injunction that clarifies that no hardware nor chemicals should be sold by Defendants to any of the customers covered by the Injunction. *See* Stipulation for Entry of Amended Preliminary Injunction [doc. # 92]. The Court will enter this Amended Injunction as a separate order. The Court also awards to Drummond the amount that Ms. Mahoney and Share received for the sale of chemicals after the Injunction was entered, which Drummond claims (without opposition) is $3,755.56, *see* Pl. Mem. Contempt [doc. # 57] at 9, as well as a portion of costs and attorneys' fees attributable to this motion that reflects the Court's resolution of the motion. The Court is hopeful that the parties will be able to agree on a total amount, and directs them to attempt to do so. If they cannot reach an agreement, they may ask the Court for a judicial resolution.

Finally, the Court grants in part and denies in part Drummond's Motion to Strike [doc. # 78].

---

[4] This portion of Mr. Gawne's testimony was read into the record during the October 26, 2009 oral argument and evidentiary hearing.

Specifically, Drummond moves to strike 15 paragraphs of Defendants' Local Rule 56(a)2 Statement [doc. # 76] on the ground that they do not cite to specific admissible evidence, but simply dispute Drummond's characterization of deposition testimony; and three paragraphs on the ground that they are contradicted by the evidence. Drummond also urges the Court to strike three of the affidavits offered in support of Defendants' Response to Plaintiff's Motion for Partial Summary Judgment [doc. # 64].

The Court grants Drummond's motion as it pertains to the affidavit of Ricky Dixon, Defs. Resp. Summ. J. [doc. # 64] Ex. C. At oral argument, counsel for Defendants conceded that Mr. Dixon was never disclosed as a person with knowledge of relevant facts or as a potential witness during discovery, as required by Rule 26(a)(1)(A)(i). Under Rule 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Therefore, the Court strikes Mr. Dixon's affidavit.

Drummond also moves to strike the affidavits of Sheila Manning, Defs. Resp. Summ. J. [doc. # 64] Ex. I, and Jason Howard, Defs. Resp. Summ. J. [doc. # 64] Ex. M, on the grounds that they are irrelevant and based on inadmissible hearsay. The Court denies Drummond's Motion to Strike [doc. # 78] as it pertains to these affidavits and the disputed paragraphs in Defendants' 56(a)2 Statement [doc. # 76]. In ruling on Drummond's motions, the Court has simply not considered evidence that was irrelevant or inadmissible, and has disregarded Defendants' 56(a)2 Statement [doc. # 76] to the extent warranted by the underlying evidence.

**V.**

For the reasons stated above, Drummond's Motion for Partial Summary Judgment [doc. # 58] is GRANTED in part and WITHDRAWN in part. Specifically, the Court grants summary judgment to Drummond on Count One of the Amended Complaint [doc. # 47], and Drummond withdrew its motion as to Counts Three and Five. The Court also GRANTS in part and DENIES in part Drummond's Motion for Contempt [doc. # 56], and GRANTS in part and DENIES in part Drummond's Motion to Strike [doc. # 78].

                                        IT IS SO ORDERED.


                              /s/      Mark R. Kravitz
                              United States District Judge


**Dated at New Haven, Connecticut: November 12, 2009.**